UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIN KING WONG, et al., | No. 2:18-cv-02811-TLN-CKD |
| Plaintiffs, | |
| v. | **ORDER** |
| WELLS FARGO BANK, N.A., et al., | |
| Defendants. | |

This matter is before the Court pursuant to Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss.[1] (ECF No. 4.) Plaintiffs Chin King Wong ("Wong") and Robitah Mohd-Khatib (collectively, "Plaintiffs") oppose Wells Fargo's motion. (ECF No. 6.) Wells Fargo has filed a reply. (ECF No. 7.) Having carefully considered the briefing filed by both parties, the Court hereby GRANTS in part and DENIES in part Wells Fargo's Motion to Dismiss. (ECF No. 4.)

///

///

///

///

---

[1] This action involves two named Defendants and 50 unnamed Defendants. Only Wells Fargo is a party to the instant motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are borrowers who seek to obtain damages from the allegedly wrongful foreclosure by Defendants Wells Fargo and U.S. Bank, N.A. ("U.S. Bank") (collectively, "Defendants") of their property at 128 Hopper Lane, Folsom, California 95630 ("Subject Property"). Plaintiffs purchased the Subject Property in or around January 1990 and obtained a "first lien loan" of $399,999.000 for the Subject Property from Wells Fargo in or around February 2006. (ECF No. 1-2 at ¶ 9.) U.S. Bank became the beneficiary of the loan in 2012. (*Id.*)

Wong submitted a short sale application to Wells Fargo in or around January 2018. (*Id.* at ¶ 10.) Wong received confirmation from Wells Fargo on or around February 8, 2018, that his application was pending and learned there was a foreclosure sale on the Subject Property that had been suspended. (*Id.*) Wells Fargo's system[2] did not reflect that Wong's application was in loss mitigation review until March 2, 2018. (*Id.*)

Wong continued to submit documents to Wells Fargo in support of his short sale application but learned a foreclosure sale on the Subject Property was scheduled for March 6, 2018. (*Id.* at ¶ 11.) Wong subsequently contacted his "supposed [Single Point of Contact]," Patricia Rubalcava ("Rubalcava"), who informed Wong "that any pending foreclosure sale of the [Subject Property] would be postponed given the pending short sale application." (*Id.*) Wong contacted Rubalcava on March 5, 2018, when the foreclosure sale was still set for the next day to ask for an update. (*Id.*) Rubalcava emailed Wong on March 5, 2018, to inform him Wells Fargo's "liquidations department requested a hard stop on the foreclosure" and Wells Fargo received her "report to suspend or postpone the sale date." (*Id.*)

Wong followed up with Rubalcava on March 6, 2018 — the date of the foreclosure sale. (*Id.* at ¶ 12.) Rubalcava informed Wong "his file had been assigned to an individual with Wells Fargo's president's office" and "that someone from the president's office should reach out to [him]." (*Id.*) Wong emailed Rubalcava an hour before the scheduled foreclosure sale to inform

---

[2] Plaintiffs' Second Amended Complaint refers to "Defendant's system," but does not identify whether it is Wells Fargo's system or U.S. Bank's system. (ECF No. 4 at ¶ 10.) Based on the context in which it is used in the SAC, the Court infers that Plaintiffs are referring to Wells Fargo's system.

2

1  her he had not heard from Wells Fargo about the postponement and "that he was growing

2  nervous," but Rubalcava did not respond. (*Id.*) Wong also asked Rubalcava for the president's

3  office contact information, but she did not respond. (*Id.*) Wong later learned the foreclosure sale

4  had occurred, "despite [Rubalcava's] insistence that it would be postponed," and a Trustee's Deed

5  Upon Sale was recorded. (*Id.* at ¶¶ 12, 13.)

6  On March 12, 2018, Plaintiffs filed the instant suit with the Sacramento County Superior

7  Court. (ECF No. 1-3 at 3–12.) On September 19, 2018, Plaintiffs submitted a Second Amended

8  Complaint ("SAC"), the operative complaint in this case. (*See* ECF No. 1-2.) Plaintiffs seek

9  injunctive relief in the form of overturning the foreclosure sale on the Subject Property, damages,

10 and attorneys' fees. (ECF No. 1-2 at 6–10.)

11 On October 19, 2018, Wells Fargo filed a Notice of Removal to this Court from

12 Sacramento County Superior Court. (ECF No. 1.) On October 24, 2018, Wells Fargo filed the

13 instant Motion to Dismiss. (ECF No. 4.)

14 **II.  STANDARD OF LAW**

15 A motion to dismiss for failure to state a claim upon which relief can be granted under

16 Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

17 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain

18 "a short and plain statement of the claim showing that the pleader is entitled to relief." *See*

19 *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the

20 complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

21 which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

22 "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

23 motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*

24 *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

25 On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

26 *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every

27 reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail*

28 *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

4

1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)).

**III.   ANALYSIS**

Plaintiffs' SAC alleges four claims: (1) violation of Cal. Civ. Code § 2924g; (2) violation of Cal. Civ. Code § 2924.11; (3) violation of Cal. Civ. Code § 2923.7; and (4) wrongful foreclosure. (ECF No. 1-2 at 5–9.) Wells Fargo moves to dismiss each of these claims for failure to state a claim upon which relief may be granted. (*See* ECF No. 4.) The Court will first address Wells Fargo's and Plaintiffs' Requests for Judicial Notice (ECF Nos. 5, 6-1) and then evaluate each of Plaintiffs' claims in turn.

A.   Requests for Judicial Notice

Generally, a district court "may not consider any material beyond the pleadings in a ruling on a 12(b)(6) motion." *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 768 (C.D. Cal. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). There are two notable exceptions to this rule. *Id.* First, "a court may take judicial notice of "matters of public record." *Id.* However, the court "need not accept as true allegations 'contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading.'" *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F. Supp. 755, 764 (C.D. Cal. 2015) (citing Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004)). Second, "a court may take judicial notice of material which is either submitted as a part of the complaint or necessarily relied upon by the complaint." *Snyder*, 913 F. Supp. 2d at 768.

The Court may also take judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Ninth Circuit has held that proceedings and determinations of the courts are a matter of public record suitable for judicial notice. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

*i.   Wells Fargo's Requests*

Wells Fargo requests the Court take judicial notice of Exhibits A through L. (ECF No. 5 at 1–3.) Plaintiffs do not oppose Wells Fargo's Request for Judicial Notice. (*See* ECF No. 6.) Exhibits A and C through L are all "matters of public record" or "proceedings and

determinations of the courts."[3]  (ECF No. 5 at 1–3.)  Furthermore, with regard to the publicly-recorded documents such as Exhibits A, C, D, and L, the accuracy of such records is not subject to reasonable dispute.  *See Armacost v. HSBC Bank USA*, 2011 WL 825151, at *1 n.1 (D. Id. Feb. 9, 2011) (taking judicial notice of documents filed in a county's public record, including deeds of trust); *Pantoja v. Countywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1189 n. 12 (N.D. Cal. 2009); *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992).  Thus, Wells Fargo's Request for Judicial Notice of Exhibits A and C through L is GRANTED.

Exhibit B is the Loan Modification Agreement dated November 14, 2009, which Wells Fargo states was "signed by plaintiff[4] and Chin King Wong."  (ECF No. 5 at 2; ECF No. 5-1 at 25–31.)  Wells Fargo has not pointed to any judicially noticeable facts in this document.  Additionally, Plaintiffs' SAC does not reference this loan modification agreement at all.  (*See*

---

[3]  Exhibit A is a "Deed of Trust dated February 15, 2006 and recorded with the Sacramento County Recorder on February 16, 2006 as Document No. 200602161839."  (ECF No. 5-1 at 1–24.)  Exhibit C is a "Corporate Assignment of Deed of Trust dated February 6, 2012 and recorded with the Sacramento County Recorder on February 14, 2012 as Document No. 201202142368."  (*Id.* at 32–34.)  Exhibit D is a "Notice of Default dated May 8, 2012 and recorded with the Sacramento County Recorder on May 9, 2012 as Document No. 201205090309."  (*Id.* at 35–39.)  Exhibit E is the "Eastern District Bankruptcy Docket (Sacramento) relating to plaintiff Chin King Wong's Chapter 13 bankruptcy filed on October 8, 2015 in the United States Bankruptcy Court, Eastern District of California, Case No. 15-27886."  (*Id.* at 40–47.)  Exhibit F is the "Chapter 13 Bankruptcy Petition filed by Chin K. Wong on October 8, 2015 in the United States Bankruptcy Court, Eastern District of California, Case No. 15-27886."  (*Id.* at 48–53.)  Exhibit G is the "Eastern District Bankruptcy Docket (Sacramento) relating to plaintiff Chin King Wong's Chapter 13 bankruptcy filed on October 17, 2017 in the United States Bankruptcy Court, Eastern District of California, Case No. 17-26854."  (*Id.* at 54–63.)  Exhibit H is the "Chapter 13 Bankruptcy Petition filed by Chin K. Wong on October 17, 2017 in the United States Bankruptcy Court, Eastern District of California, Case No. 17-26854."  (*Id.* at 64–71.)  Exhibit I the "Motion for *In Rem* Relief from the Automatic Stay brought by creditor U.S. Bank on December 8, 2017 in the U.S. Bankruptcy Court, Eastern District of California, Case No. 17-26854."  (*Id.* at 72–78.)  Exhibit J is the "Order by the U.S. Bankruptcy Court entered on January 19, 2018, granting U.S. Bank's Motion for *In Rem* Relief, Eastern District of California, Case No. 17-26854."  (*Id.* at 79–80.)  Exhibit K is the "Order Closing Case Where Case Has Been Dismissed, entered by the U.S. Bankruptcy Court on March 28, 2018 Eastern District of California, Case No. 17-26854."  (*Id.* at 81–82.)  Exhibit L is the "Trustee's Deed Upon Sale recorded with the Sacramento County Recorder's Office on March 16, 2018 as Document No. 201803161124."  (*Id.* at 83–87.)

[4]  By stating "plaintiff and Chin King Wong," the Court assumes Wells Fargo refers to Robitah Mohd-Khatib, the other Plaintiff in this case.

ECF No. 1-2.) Thus, it cannot be argued the agreement was "necessarily relied upon by the complaint." *See Snyder*, 913 F. Supp. 2d at 768. Thus, Wells Fargo's Request for Judicial Notice of Exhibit B is DENIED.

       *ii.*  *Plaintiffs' Requests*

Plaintiffs request the Court to take judicial notice of Exhibits A and B. (ECF No. 6-1 at 1–2.) Wells Fargo does not object to this request in its reply. (*See* ECF No. 7.) As both Exhibits A and B are "matters of public record" or "proceedings and determinations of the courts,"[5] Plaintiffs' Request for Judicial Notice of Exhibits A and B is GRANTED.

  B.  <u>Claim One: Violation of California Civil Code § 2924g</u>

Plaintiffs allege Defendants[6] violated their obligation under California Civil Code § 2924g ("§ 2924g") "to postpone the foreclosure sale of the [Subject Property] [pursuant to] their agreement to postpone the sale of the property." (ECF No. 1-2 at ¶ 17.) Wells Fargo argues the claim under § 2924g "is misplaced because Wells Fargo ceased to be the 'beneficiary' and 'mortgagor' after the loan assignment to U.S. Bank in February 2012," and thus any agreement under § 2924g must be between Plaintiffs (the "trustors" or "mortgagors") and U.S. Bank (the "beneficiary" or "mortgagee"). (ECF No. 4 at 11; ECF No. 7 at 2.) Wells Fargo further argues even if Plaintiffs could state a claim, case law provides Plaintiffs were required to provide "a legitimate tender of the debt at issue" to accompany their claim and Plaintiffs failed to do so. (ECF No. 4 at 11–12.) Wells Fargo finally argues this claim fails because Plaintiffs have not sufficiently articulated economic damages and Plaintiffs' claims for destruction of credit and severe emotional distress damages fail as a matter of law. (*Id.* at 13–14.) In opposition, Plaintiffs

---

[5]  Exhibit A is "Defendant's Demurrer to Plaintiffs' First Amended Complaint filed on July 9, 2018 in . . . Sacramento County Superior Court Case No. 34-2018-00228853." (ECF No. 6-1 at 3–26.) Exhibit B is a "Minute Order on Defendant's Demurrer to Plaintiffs' First Amended Complaint filed on September 4, 2018 in . . . Sacramento County Superior Court Case No. 34-2018-00228853." (*Id.* at 27–31.)

[6]  Again, Plaintiffs' SAC states "*Defendant* violated its statutory obligation," but in the next sentence states "[as] a result of *Defendants*' violations." (ECF No. 1-2 at ¶ 17 (emphasis added).) Plaintiffs also bring this claim against both Defendants. (*Id.* at 5.) The Court therefore construes the former quotation as referencing both Defendants.

argue Wells Fargo is an "agent of U.S. Bank and is independently liable for this violation." (ECF No. 6 at 4.)

The Court will first address the § 2924g claim, and then each of Wells Fargo's arguments — agency/assignment, tender, and damages — in turn.

                i.       *Section 2924g Claim*

Section 2924g(c)(1) provides that a trustee shall postpone the sale of a property with "the order of any court of competent jurisdiction," if it is "stayed by operation of law," "by mutual agreement, whether oral or in writing, of any trustor and any beneficiary or any mortgagor and any mortgagee," or "at the discretion of the trustee." Cal. Civ. Code § 2924g (2020), *amended by* 2020 Cal. Legis. Serv. Ch. 202 (S.B. 1079) (West).

Here, Plaintiffs allege the parties reached a mutual agreement when "Wells Fargo agreed to postpone the sale of the [Subject P]roperty." (ECF No. 1-2 at ¶ 16.) Specifically, Plaintiffs allege "Patricia Rubalcava informed Plaintiff[s] that any pending foreclosure sale of the property would be postponed given the pending short sale application." (*Id.* at ¶ 11.) Plaintiffs allege when they noted the foreclosure sale was still set for March 6, 2018, they continued to ask Rubalcava about the sale. (*Id.*) Plaintiffs further allege Rubalcava emailed them on March 5, 2018, to notify them "Wells Fargo's 'liquidations department requested a hard stop on the foreclosure,'" and "Wells Fargo got her 'report to suspend or postpone the sale date.'" (*Id.*) On the date of the sale, Rubalcava notified them "that someone from the president's office should reach out to Plaintiff[s]," as their file had been assigned to that office. (*Id.* at ¶ 12.) Plaintiffs contend that if they had received "sufficient notice of the sale," they "could have and would have reinstated the loan or taken other measures to save the property." (*Id.* at ¶ 17.) Based on these allegations, the Court finds Plaintiffs have sufficiently alleged the existence of a mutual agreement under § 2924g.

                ii.       *Agency Issue*

The judicially-noticed recorded assignment of the Deed of Trust dated February 6, 2012, assigned Wells Fargo's interest in Plaintiffs' loan to U.S. Bank. (*See* ECF No. 5-1 at 32–34.) However, Plaintiffs incorporate by reference the allegations of all preceding claims and facts in

8

their § 2924g claim and suggest that even after the assignment, "each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each remaining Defendant." (*Id.* at ¶¶ 7, 14.) Plaintiffs maintain in their opposition that they sufficiently allege Wells Fargo and U.S. Bank had an agency relationship in which U.S. Bank "was the owner of the beneficial interest in the Deed of Trust securing Plaintiff[s'] loan," and Wells Fargo "was the servicer of the loan and maintained all servicing rights and responsibilities associated with Plaintiff[s'] mortgage loan." (ECF No. 6 at 5 (citing ECF No. 1-2 at ¶¶ 5, 6, 9, 26).) Further, Plaintiffs cite to a statute that expressly identifies a mortgage servicer as the current loan owner's "authorized agent," as well as case law that provides an agent's conduct is binding on the principal. (*Id.*) (citing Cal. Civ. Code § 2920.5(a); *Dastagir v. Dastagir*, 109 Cal. App. 2d 809 (1952); *American Sur. Co. of N.Y. v. Heise*, 136 Cal. App. 2d 689 (1955)). Wells Fargo fails to address the loan servicer–beneficiary agency relationship in its reply. (*See* ECF No. 7.)

Whether Wells Fargo and U.S. Bank had an agency relationship remains a question of fact. Accepting all factual allegations as true, as it must at this stage in the pleadings, the Court finds Plaintiffs have sufficiently alleged an agency relationship between the Defendants. *See Cruz*, 405 U.S. at 322 (holding on a motion to dismiss, the factual allegations of the complaint must be accepted as true).

      *iii.*  *Tender Issue*

Tender is generally required in actions to set aside a completed foreclosure sale by a trustee for irregularities in the sale procedure, such as violations of § 2924. *Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Securities Trust 2004-AC7*, 2013 WL 12141443, at *12 (C.D. Cal. Feb. 22, 2013) (collecting cases). "The tender rule applies to equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument, or for wrongful foreclosure." *Green v. Central Mortg. Co.*, 148 F. Supp. 3d 852, 870 (N.D. Cal. 2015) (citing *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578–79 (1984)). The tender rule also applies to claims seeking damages, as "plaintiffs cannot claim to have been damaged by the foreclosure process unless they are in a position to redeem the property." *Toneman*, 2013 WL 12141443, at *12. The rationale for this rule is that any irregularities in the

foreclosure sale do not damage plaintiffs if they could not have redeemed the property had the procedures been proper. *Id.* "A plaintiff must (1) demonstrate a willingness to pay and (2) show the ability to pay." *Pantoja*, 640 F. Supp. 2d at 1184 (citing *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)).

Nevertheless, the tender rule is an equitable concept, which means it is within the Court's discretion to require tender from a plaintiff. *Id.* Courts have held "failure to allege tender is not decisive at [the pleading] stage." *Id.* (quoting *Storm v. Am.'s Servicing Co.*, 2009 WL 3756629, at *6 (S.D. Cal. Nov. 6, 2009); *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *8–9 (C.D. Cal. Sept. 3, 2014)). Furthermore, courts have held the tender rule does not apply to violations of the California Homeowner's Bill of Rights ("HBOR"). *Id.* (citing *Valbuena v. Ocwen Loan Serv., LLC*, 237 Cal. App. 4th 1267, 1273–74 (2015) ("Nothing in the language of HBOR suggests that a borrower must tender the loan balance before filing suit based on a violation of the requirements of the law.").

This Court, too, has excused compliance with the tender requirement in the past when plaintiffs have sought to prevent the sale of their home through injunctive relief, when plaintiffs allege that with a modification they could have cured their deficiency without having to pay the amount due (but defendants foreclosed while plaintiffs' loan modification application was pending), or when plaintiffs have alleged a violation of California's foreclosure statutes. *See Way v. JP Morgan Chase Bank, NA*, 2018 WL 2117630, at *10 (E.D. Cal. May 8, 2018); *Swasey v. Seterus, Inc.*, 2018 WL 3017554, at *11 (E.D. Cal. Jun. 14, 2018).

Here, Plaintiffs seek both equitable and non-equitable remedies, in the form of injunctive relief overturning the foreclosure sale on the Subject Property, damages, and attorneys' fees. (ECF No. 1-2 at 6–10.) Defendants argue Plaintiffs' Claim One (the instant claim) and Claim Four (wrongful foreclosure) should both fail, as tender is required in "any claim that challenges the foreclosure process" and Plaintiffs "cannot tender the considerable debt at issue." (ECF No. 4 at 2, 12.) Plaintiffs note tender is not required "in cases involving dual[-]tracking allegations"[7]

---

[7] The HBOR prohibits "dual-tracking," a process by which a financial institution pursues foreclosure while simultaneously making a decision on a completed loan modification.

10

and in cases in which "the borrower seeks monetary damages." (ECF No. 6 at 6.) As Plaintiffs allege violations of California's foreclosure statues and also argue they "could have and would have reinstated the loan or taken other measures to save the property" (ECF No. 6 at 7), the Court finds Plaintiffs are excused from the tender requirement at this time.

                *iv.*      *Damages Issue*

Plaintiffs allege as a result of Wells Fargo's violation of § 2924g, the Subject Property "was sold at a trustee's sale which [Wong] did not have sufficient notice of." (ECF No. 1-2 at ¶ 17.) Plaintiffs further allege if they had notice of the sale, "[Wong] could have and would have reinstated the loan or taken other measures to save the property." (*Id.*) Plaintiffs also assert they "lost all equity [Wong] had accumulated in his home." (ECF No. 6 at 8 (citing ECF No. 1-2 at ¶ 19.).) Regardless of Plaintiffs' claims for destruction of credit and severe emotional distress damages, which Wells Fargo argues should fail as a matter of law (*see* ECF No. 4 at 13–14), the Court finds Plaintiffs sufficiently alleged damages through allegation of a foreclosure sale and the loss of their property.

Based on the foregoing, the Court finds Plaintiffs have pleaded sufficient "factual content that allows [this Court] to draw the inference that [Wells Fargo] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. Accordingly, Wells Fargo's Motion to Dismiss Claim One is DENIED.

            C.      <u>Claim Two: Violation of California Civil Code § 2924.11</u>

Plaintiffs allege Wells Fargo violated California Civil Code § 2924.11 ("§ 2924.11") by conducting a trustee's sale while Plaintiffs' short sale application, a "complete foreclosure prevention alternative application," was pending. (ECF No. 1-2 at ¶¶ 22–23.) Plaintiffs specifically assert Wong submitted a complete short sale application "on or around March 2, 2018," but Wells Fargo still proceeded with the foreclosure sale on the Subject Property on March 6, 2018. (*Id.* at ¶ 23.) The Court declines to evaluate Wells Fargo's arguments because the underlying law has changed.

---

application. *Wilkins v. Bank of America, N.A.*, 2016 WL 5940082, at *4 (E.D. Cal. Aug. 19, 2016); *see generally* Cal. Civ. Code § 2923.6.

11

1     Here, it appears Plaintiffs rely on a prior version of § 2924.11.  The prior version

2 provides:

> (a) If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative.

Cal. Civ. Code § 2924.11 (eff. Jan. 1, 2018 to Dec. 31, 2018).  This provision encompassed the prohibition on dual-tracking at the time Plaintiffs filed their 2018 complaint and when Wells Fargo filed its motion to dismiss.  *See* Cal. Civ. Code § 2924.11(a) (2018); *see also Miller v. Select Portfolio Servicing, Inc.*, 2019 WL 3080817, at *5 (E.D. Cal. Jul. 15, 2019).  Effective January 1, 2019, § 2924.11 was amended and the prior subdivision (a) was repealed.  *See* 2018 Cal. Legis. Serv. Ch. 404 (S.B. 818) (West).

   The Ninth Circuit has held the rule of statutory continuity provides that "when a statute is repealed without a saving clause and as a part of the same act it is simultaneously re-enacted in substantially the same form and substance, all rights and liabilities which accrued under the former act will be preserved and enforced."  *Travis v. Nationstar Mortgage, LLC*, 733 Fed. Appx. 371, 373 (9th Cir. 2018).  In *Travis*, the Ninth Circuit specifically found the pre-2018 § 2923.6 "was reenacted with somewhat different language as § 2924.11," but § 2924.11 "still protects the same rights."  *Id.*  Thus, the court allowed the plaintiffs to seek to amend their complaint as to their claim.

   A.B. 278, which enacted the pre-2019 § 2924.11 that was effective from Jan. 1, 2018 to Dec. 31, 2018, also enacted a version of California Civil Code § 2923.6 ("§ 2923.6") that was effective from Jan. 1, 2013 through Dec. 31, 2017.  *See* 2012 Cal. Legis. Serv. Ch. 86 (A.B. 278) (West).  The pre-2018 § 2923.6(c) stated:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer,

> mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

A.B. 278 provided the pre-2018 § 2923.6(c) would sunset on Dec. 31, 2017, and the pre-2019 § 2924.11 would be effective Jan. 1, 2018. *See* 2012 Cal. Legis. Serv. Ch. 86 (A.B. 278) (West). Courts have found that since "both provisions were enacted at the same time . . . they represent a unitary legislative scheme to protect the borrower from being dual[-]tracked." *Haynish v. Bank of America, N.A.*, 2018 WL 2445516, at *4 (N.D. Cal. May 31, 2018) (quoting *Jacobik v. Wells Fargo Bank, N.A.*, 2018 WL 1184812, at *5 (N.D. Cal. Mar. 7, 2018)) (internal quotations omitted). Courts found "[t]he two laws are also mostly coextensive when it comes to prohibiting financial institutions from advancing the foreclosure process while a modification application is pending." *Id.* Under both laws, "a financial institution may not record notice of sale or conduct a trustee's sale while a modification application is under review." *Id.* (comparing Cal. Civ. Code § 2923.6(c) (2013) with *id.* § 2924.11(a) (2018)).

S.B. 818, while repealing the pre-2019 § 2924.11(a), also reinstated the pre-2018 § 2923.6(c) verbatim, which suggests the Legislature intended for the continuation of a dual-tracking ban. *See* 2018 Cal. Legis. Serv. Ch. 404 (S.B. 818) (West). The language of the dual-tracking ban, as re-codified at § 2923.6, is narrower than the language of pre-2019 § 2924.11 (the pre-2019 § 2924.11 applied to "foreclosure prevention alternatives" while the current § 2923.6 applies to "first lien loan modification application[s]"). *See Haynish*, 2018 WL 2445516, at *5. Despite the language dissimilarity, the Ninth Circuit held "all rights and liabilities which accrued under former [§ 2923.6] will be preserved and enforced" through the pre-2019 § 2924.11. *See Travis*, 733 Fed. Appx. at 373.

The parties have not expressed any opinions as to how the 2019 amendment and repeal of § 2924.11(a) affects Plaintiffs' claim, as their briefings were filed prior to the enactment of the current version. As the law has changed, "[i]f [P]laintiffs wish to plead a dual[-]tracking claim, they must specifically allege as much and identify the controlling law." *Miller*, 2019 WL 3080817, at *5 (citing *Travis*, 733 Fed. Appx. at 373).

Accordingly, Wells Fargo's Motion to Dismiss Claim Two is GRANTED with leave to amend.

### D. Claim Three: Violation of California Civil Code § 2923.7

Plaintiffs allege Wells Fargo violated California Civil Code § 2923.7 ("§ 2923.7") when "it appointed a single point of contact [SPOC] who clearly did not have access to individuals with the ability and authority to stop the sale" of the Subject Property. (ECF No. 1-2 at ¶ 29.) Wells Fargo argues Plaintiffs' § 2923.7 claim fails for the exact same reasons articulated in the prior claim — the Subject Property was not owner-occupied at the time of the Defendants' purported misconduct and Plaintiffs have not alleged facts to suggest there has been a "material" violation of the statute. (ECF No. 4 at 18–19.) Wells Fargo notes there "are no facts that suggest a link between [its] actions and *actual damages* to [P]laintiffs." (*Id.* at 19.) The Court will first address the § 2923.7 claim and then address each of Wells Fargo's arguments in turn.

#### *i.     Section 2923.7 Claim*

Section 2923.7 provides: "When a borrower requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a [SPOC] and provide to the borrower one or more direct means of communication with the [SPOC]." Cal. Civ. Code § 2923.7. Section 2923.7 was enacted as a part of the HBOR in an attempt to eliminate dual-tracking, as it was intended "to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Santana v. BSI Financial Services, Inc.*, 2020 WL 6150473, at *10 (S.D. Cal. Oct. 20, 2020) (citing *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 904–05 (2013)). The SPOC is responsible for having access "to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative" and "to individuals with the ability and authority to stop foreclosure proceedings when necessary." Cal. Civ. Code §§ 2923.7(b)(3), 2923.7(b)(5). Courts have denied a motion to dismiss a § 2923.7 claim when plaintiffs alleged the defendant's representative gave them conflicting information "while acknowledging they received, processed, and denied two loan modification applications," or provided them with incorrect information about what foreclosure prevention alternatives were

14

available. *See Green*, 148 F. Supp. 3d at 875; *Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 945 (N.D. Cal. 2015).

Here, it appears Plaintiffs were assigned a SPOC — Rubalcava with Wells Fargo. Plaintiffs allege when they learned about the foreclosure sale, Rubalcava informed Wong "she had submitted a request for the sale to be postponed and indicated that a hard stop on the foreclosure sale had been noted in Plaintiff's[8] account." (ECF No. 1-2 at ¶¶ 11, 30.) On the date of the foreclosure sale, when Wong reached out to Rubalcava, she informed him "that his file had been assigned to an individual with the Wells Fargo president's office" and "that someone from the president's office should reach out to [Wong]." (*Id.* at ¶ 12.) Plaintiffs allege they reached out to Rubalcava an hour before the sale as they had not heard from Wells Fargo, but "Rubalcava did not respond." (*Id.*) Plaintiffs allege the Subject Property "still sold at foreclosure," which suggests "the single point of contact appointed to Plaintiff's account did not have the required access to individuals that could stop the sale of [the Subject Property]." (*Id.*) Based on these allegations, the Court finds Plaintiffs have sufficiently alleged a violation of § 2923.7.

      *ii.*  *Owner-Occupied*

The HBOR provides § 2923.7 "shall apply only to a first lien mortgage or deed of trust" where the first lien mortgage or deed of trust is secured "by owner-occupied residential real property containing no more than four dwelling units," or "by residential real property that is occupied by a tenant, contains no more than four dwelling units, and meets all of the conditions described [by the statute]." Cal. Civ. Code § 2924.15. The law clarifies "owner-occupied" means "the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes." *Id.*

Here, Wells Fargo argues Plaintiffs have failed to adequately allege the Subject Property is owner-occupied or their principal residence, pointing to the judicially-noticed bankruptcy filings in which Wong listed different addresses. (ECF No. 4 at 15 (citing ECF No. 5-1 at 48–53,

---

[8]  Again, the SAC is ambiguous. However, given the context, the Court construes "Plaintiff's" to mean Wong's, and will hereinafter do so, as deemed appropriate by the context of the allegations in the SAC.

1   64–71).) However, Plaintiffs argue in opposition that "both filings significantly predate the
2   allegations of the instant actions," as the bankruptcy filings were from 2015 and 2017 and the
3   instant action was filed in 2018. (ECF No. 6 at 8.) Plaintiffs further argue Wells Fargo has not
4   offered any "judicially noticeable documents" that support a finding the Subject Property was not
5   owner-occupied. (*Id.* at 8–9.) Plaintiffs also specifically allege in their SAC the Subject Property
6   "is a single[-]family home and has served as [Wong's] residence for the times mentioned herein."
7   (ECF No. 1-2 at ¶ 8.)

8   The Court is left with a factual dispute which at this juncture the Court must find in favor
9   of Plaintiffs. *See Cruz*, 405 U.S. at 322. The Court finds Plaintiffs have alleged sufficient facts to
10  demonstrate the Subject Property was owner-occupied.

11                              *iii.     Material Violation*

12  The HBOR authorizes relief only if it can be proven there is a "material" violation of §
13  2923.7. *See* Cal. Civ. Code § 2924.12(b). "Material" has not been defined by statute or case law,
14  but courts have concluded "a violation [under § 2924.12] is 'material' if it is plausible that the
15  violation 'affected a plaintiff's loan obligations or the modification process.'" *Greene v. Wells*
16  *Fargo Bank, N.A.*, 2018 WL 6832092, at *7 (N.D. Cal. Dec. 28, 2018) (citing *Cornejo v. Ocwen*
17  *Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015); *Cardenas v. Caliber Home*
18  *Loans, Inc.*, 281 F. Supp. 3d 862, 869–71 (N.D. Cal. 2017)).

19  Plaintiffs incorporate by reference the allegations of all preceding claims and facts in their
20  § 2923.7 claim. (ECF No. 1-2 at ¶ 26.) Plaintiffs allege "it is clear that the [SPOC] appointed to
21  [Wong's] account did not have the required access to individuals that could stop the sale of [the
22  Subject Property]," as the Subject Property "still sold at foreclosure." (*Id.* at ¶ 30.) Plaintiffs
23  emphasize that "had [Rubalcava] had access to the individuals with the ability and authority to
24  stop the sale, the foreclosure sale would not have occurred as it did." (ECF No. 6 at 10.)

25  The Court agrees Plaintiffs' allegations support an inference of a "material violation" of §
26  2924.11. *See Travis*, 733 Fed. Appx. at 375 ("[E]ven though HBOR does not require servicers to
27  provide borrowers with loan modifications or any other specific alternative to foreclosure,
28  [plaintiffs] still could have been harmed by [defendant's] failure to communicate with them about

16

1  the status of their loan modification application and about other alternatives to foreclosure").
2  Plaintiffs have specifically alleged Wells Fargo's failure to establish a SPOC for Plaintiffs
3  affected their "loan obligations or the modification process." *See Greene*, 2018 WL 6832092, at
4  *7.
5       Again, the Court is left with a factual dispute which at this juncture the Court must find in
6  favor of Plaintiffs. *See Cruz*, 405 U.S. at 322. The Court finds Plaintiffs have alleged sufficient
7  facts to demonstrate a material violation of § 2923.7.
8       Based on the foregoing, the Court finds Plaintiffs have sufficiently pleaded their § 2923.7
9  claim against Defendants. *See Iqbal*, 556 U.S. at 680. Accordingly, Wells Fargo's Motion to
10 Dismiss Claim Three is DENIED.

11                 E.      <u>Claim Four: Wrongful Foreclosure</u>

12      Plaintiffs allege Defendants wrongfully foreclosed on the Subject Property by breaching a
13 "statutorily and contractually created duty by instituting foreclosure proceedings and selling
14 [Wong's] property at foreclosure while [he] was being reviewed for loss mitigation options, in
15 violation of Cal. Civ. Code § 2924.11." (ECF No. 1-2 at ¶ 36.) Wells Fargo argues the wrongful
16 foreclosure claim is premised on prior statutory claims and "due to the shortcomings that plague"
17 those claims, "[P]laintiffs fail to state a viable wrongful foreclosure claim." (ECF No. 4 at 19.)
18      To state a claim for wrongful foreclosure, a plaintiff must allege: "(1) the trustee or
19 mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a
20 power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or
21 harmed; and (3) . . . the trustor or mortgagor tendered the amount of the secured indebtedness or
22 was excused from tendering." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1145
23 (N.D. Cal. Sept. 25, 2013) (citing *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

24                 i.      *Illegality of Trustee's Sale*

25      Wells Fargo argues Plaintiffs have failed to allege "an illegal, fraudulent, or willfully
26 oppressive" act by Wells Fargo. (ECF No. 4 at 19.) In opposition, Plaintiffs assert Wells Fargo
27 "wrongly sold Plaintiff[s'] home at foreclosure, after failing to uphold its duties under [Cal.] Civil
28 Code §§ 2924g, 2923.6, and 2923.7," and that Plaintiffs have sufficiently alleged damages. (ECF

No. 6 at 11.)

The Court finds Plaintiffs sufficiently allege illegal acts by Wells Fargo. Plaintiffs allege Wells Fargo breached its duty "by instituting foreclosure proceedings and selling [the Subject Property] at foreclosure while Plaintiff[s] were being reviewed for loss mitigation options, in violation of Cal. Civ. Code § 2924.11" and "by carrying out foreclosure proceedings on [the Subject Property] without providing Plaintiff[s] with the requisite notice in violation of Cal. Civ. Code § 2924g." (ECF No. 1-2 at ¶¶ 36, 37.) In addition to the allegations previously discussed, Plaintiffs also allege they attempted to contact Wells Fargo to inquire about the foreclosure sale repeatedly and did not receive a response as to whether the sale would be stopped. (*Id.* at ¶¶ 11, 12, 38.)

The Court is left with a factual dispute which at this juncture the Court must find in favor of Plaintiff. *See Cruz*, 405 U.S. at 322. Accordingly, the Court finds Plaintiffs have alleged sufficient facts to demonstrate the potential illegality of the foreclosure sale.

### ii. *Prejudice or Harm to Plaintiffs*

Wells Fargo argues Plaintiffs have not "sufficiently alleged any resulting damages from the conduct alleged in the SAC." (ECF No. 4 at 19.) As previously discussed, Plaintiffs argue in opposition they have "plainly alleged that Defendants' conduct resulted in [Wong] losing [the Subject Property] to foreclosure and all equity contained in the property." (ECF No. 6 at 11.) Plaintiffs incorporate by reference the allegations of all preceding claims and facts in their wrongful foreclosure claim, and Plaintiffs did specifically allege these damages. (ECF No. 1-2 at ¶¶ 33, 38.) Thus, construing Plaintiffs' SAC liberally, as the Court must at this stage in the pleadings, the Court finds Plaintiffs have sufficiently alleged harm caused by the alleged wrongful foreclosure. *See Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 998–99 (2016) (liberally construing a complaint and holding the plaintiff alleged harm even where the wrongful foreclosure claim did not incorporate by reference the remaining allegations).

/ / /

/ / /

/ / /

*iii.*     Tender

Wells Fargo argues Plaintiffs "cannot plausibly allege an actual tender of the debt at issue." (*Id.*) As noted previously, the Court has determined Plaintiffs are excused from compliance with the tender rule at the pleading stage.

Thus, Plaintiffs have adequately alleged facts supporting the three elements necessary to prove a claim for wrongful foreclosure. Accordingly, Wells Fargo's motion to dismiss Claim Four is DENIED.

### IV.     CONCLUSION

The Court hereby GRANTS in part and DENIES in part Wells Fargo's Motion to Dismiss (ECF No. 4) as follows:

1. Wells Fargo's Motion to Dismiss Plaintiffs' Claim One is DENIED;
2. Wells Fargo's Motion to Dismiss Plaintiffs' Claim Two is GRANTED with leave to amend;
3. Wells Fargo's Motion to Dismiss Plaintiffs' Claim Three is DENIED; and
4. Wells Fargo's Motion to Dismiss Plaintiffs' Claim Four is DENIED.

Wells Fargo shall file an answer to the Second Amended Complaint not later than thirty (30) days after the electronic filing date of this Order.

IT IS SO ORDERED.

DATED: November 29, 2020

Troy L. Nunley
United States District Judge