UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIN KING WONG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | No. 2:18-cv-02811-TLN-CKD<br><br><br><br>**ORDER** |

This matter is before the Court on Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and U.S. Bank, N.A.'s ("U.S. Bank") (collectively, "Defendants") Motion for Summary Judgment, or in the alternative, Summary Adjudication.[1] (ECF No. 22.) Plaintiffs Chin King Wong ("Wong") and Robitah Mohd-Khatib ("Mohd-Khatib") (collectively, "Plaintiffs") filed an opposition.[2] (ECF No. 25.) Defendants filed a reply. (ECF No. 27.) Having carefully considered the briefing filed by both parties, the Court GRANTS Defendants' motion.

///

---

[1] This action involves two named Defendants and 50 unnamed Defendants. Only Wells Fargo and U.S. Bank are parties to the instant motion.

[2] Plaintiffs also filed a Request for Judicial Notice with their opposition. (ECF No. 25-2.) Specifically, Plaintiffs request the Court take judicial notice of documents in the docket for the instant case. As the Court need not take judicial notice of documents already in its docket, the Court DENIES Plaintiffs' request.

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[3]

This case arises from the foreclosure sale of Plaintiffs' property at 128 Hopper Lane, Folsom, California 95360 ("Subject Property"). Plaintiffs purchased the Subject Property in January 1990. (ECF No. 25 at 1.) In February 2006, Plaintiffs obtained a first lien loan of $399,999.000 for the Subject Property from Wells Fargo ("Subject Property Loan") and obtained an equity line of credit from Wells Fargo in the amount of $53,750.00 secured against the Subject Property. (ECF No. 25 at 1–2.) In addition to the Subject Property, Plaintiffs also owned the following residential properties: (1) 198 Marsh Haw Drive, Folsom, California; (2) 1153 King Fisher Circle, Folsom, California; and (3) 1078 Rathbone Circle, Folsom, California. (ECF No. 22 at 9.) For each of these residential properties, Plaintiffs had a corresponding mortgage with Wells Fargo. (*Id*.)

Beginning in 2009, Plaintiffs began experiencing financial difficulties. (ECF No. 25 at 2.) In November 2009, Plaintiffs applied for and received a loan modification from Wells Fargo for the Subject Property Loan which lowered Plaintiffs' monthly payment on the loan. (*Id*.) Less than a year later, in September 2010, Plaintiffs applied for and received another loan modification for the Subject Property Loan, again lowering their monthly payment. (*Id*.) Despite receiving these two loan modifications, Plaintiffs stopped making payments on the Subject Property Loan in November 2011. (*Id*.)

In February 2012, Wells Fargo assigned its beneficial interest in the Subject Property Deed of Trust to U.S. Bank. (*Id*.) Wells Fargo continued to function as the servicer of the Subject Property Loan. (*Id.* at 2–3.) Due to the delinquency on the Subject Property Loan, U.S. Bank had its foreclosure trustee, First American Trustee Servicing Solutions, LLC ("First American Trustee"), record a Notice of Default with Sacramento County on May 9, 2012. (*Id*.)

Between 2012 and 2017, Wells Fargo considered Plaintiffs for a potential third modification to the Subject Property Loan on several occasions. (*Id*. at 3.) Wells Fargo denied each of Plaintiffs' requests for a loan modification based on Plaintiffs' gross monthly income of

---

[3]     The following facts are undisputed unless otherwise indicated.

$9,000 or more. (*Id*.) Wells Fargo also denied Plaintiffs' numerous requests for a potential short sale of the Subject Property because Wong transferred a ten percent interest in the Subject Property to Pendleton Trust and a short sale under the Home Affordable Foreclosure Alternative program was not permitted due to a business entity owning a portion of the Subject Property. (*Id.* at 4.)

During this period, Wong also filed for Chapter 13 bankruptcy three times. In response to Wong's third bankruptcy filing, U.S. Bank brought a motion for relief from the automatic stay, so U.S. Bank could complete the foreclosure on the Subject Property. (*Id*. at 5.) In January 2018, the Court granted U.S. Bank relief. (*Id*.) In February 2018, U.S. Bank's trustee scheduled a trustee sale of the property for March 6, 2018, and notified Plaintiffs of the trustee sale. (*Id*.)

Four days before the scheduled foreclosure sale, on March 2, 2018, Plaintiffs submitted a mortgage assistance application relating to the Subject Property loan to Wells Fargo. (*Id*.) Plaintiffs allege Wong subsequently contacted Wells Fargo employee, Particia Rubalcava ("Rubalcava"), who allegedly stated to Wong "that any pending foreclosure sale of the [Subject Property] would be postponed given the pending short sale application."[4] (ECF No. 25-1 at 2.) Plaintiffs also allege on March 5, 2018, Rubalcava emailed Wong and told Wong that Wells Fargo's "liquidation department requested a hard stop on the foreclosure."[5] (*Id*.) On March 6, 2018, the trustee's sale of the Subject Property went forward as scheduled and a buyer purchased the Subject Property at auction for $482,000.00. (ECF No. 22 at 12.) At the time of the sale, the secured debt on the Subject Property Loan was $596,548.99. (*Id*.)

On March 12, 2018, Plaintiffs filed suit against Defendants and fifty other Doe Defendants alleging four causes of action: (1) violation of Cal. Civ. Code § 2924g; (2) violation of Cal. Civ. Code § 2924.11; (3) violation of Cal Civ. Code § 2923.7; and (4) wrongful foreclosure. (ECF No. 1-2 at 5–9.) Wells Fargo filed a motion to dismiss Plaintiffs' claims.

---

[4] Defendants disagree and argue not only is there no record of Rubalcava's statement to Wong, but Wells Fargo also has no record it received a completed short sale application from Plaintiffs between January 1, 2018 and March 6, 2018. (ECF No. 25 at 5.) Wells Fargo only has record of Plaintiffs' mortgage assistance application submitted on March 2, 2018.

[5] Defendants disagree and argue there is no record of such communication.

1  (ECF No. 4.) The Court denied Well Fargo's motion as to all claims except Claim Two. (ECF
2  No. 9.) On December 2, 2022, Defendants filed the instant motion for summary judgment, or in
3  the alternative, summary adjudication. (ECF No. 22.)

4  **II.   STANDARD OF LAW**

5  Summary judgment is appropriate when the moving party demonstrates no genuine issue
6  of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed.
7  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary
8  judgment practice, the moving party always bears the initial responsibility of informing the
9  district court of the basis of its motion, and identifying those portions of "the pleadings,
10 depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"
11 which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.
12 Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof
13 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
14 solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at
15 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a
16 party who does not make a showing sufficient to establish the existence of an element essential to
17 that party's case, and on which that party will bear the burden of proof at trial.

18 If the moving party meets its initial responsibility, the burden then shifts to the opposing
19 party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.
20 Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.
21 Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute,
22 the opposing party may not rely upon the denials of its pleadings, but is required to tender
23 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
24 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must
25 demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the
26 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
27 the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for
28 the nonmoving party. *Id.* at 251–52.

1    In the endeavor to establish the existence of a factual dispute, the opposing party need not
2 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
3 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
4 trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is
5 to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
6 trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's
7 note on 1963 amendments).

8    In resolving the summary judgment motion, the court examines the pleadings, depositions,
9 answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.
10 R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence
11 of the opposing party is to be believed and all reasonable inferences that may be drawn from the
12 facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.
13 at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
14 obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*
15 *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.
16 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party
17 "must do more than simply show that there is some metaphysical doubt as to the material facts."
18 *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead
19 a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at
20 587.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**III.     ANALYSIS**

Defendants move for summary judgment as to Plaintiffs' three remaining claims.  (ECF No. 22.)  Defendants contend Claim One and Claim Four fail as a matter of law because tender is required in any claim that challenges the foreclosure process and Plaintiffs fail to raise a triable issue of material fact regarding their ability to tender the $596,548.99 owed to Wells Fargo.  (*Id*. at 16, 25.)  Defendants also argue Claim Three fails because the factual record clearly shows Plaintiffs used the Subject Property as a rental property and not their primary residence.  (*Id*. at 21.)  The Court will address each of Defendants' arguments in turn.

          A.     <u>Tender Issue</u>

In both Claim One and Claim Four, Plaintiffs challenge the foreclosure sale of the Subject Property and seek both equitable and non-equitable remedies, including injunctive relief overturning the foreclosure sale on the Subject Property, damages, and attorneys' fees.  (ECF No. 1-2 at 6–10.)  Defendants argue both claims must fail as a matter of law because Plaintiffs have not made a "legitimate tender of the debt at issue" and a court cannot set aside a completed foreclosure sale by a trustee without tender.  (ECF No. 22 at 16–17.)  In opposition, Plaintiffs contend the Court should disregard the tender requirement.  (ECF No. 25-1 at 6.)

"[U]nder California law, '[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.'"  *Agbabiaka v. HSBC Bank USA Nat. Ass'n*, No. C 09-05583 JSW, 2010 WL 1609974, at *6 (N.D. Cal. Apr. 20, 2010) (quoting *Karlsen v. Am. Savings and Loan Assoc.*, 15 Cal. App. 3d 112, 117–18 (1971)).  "The tender rule applies to equitable claims, such as claims to set aside a trustee's sale, to quiet title, to cancel an instrument, or for wrongful foreclosure."  *Green v. Central Mortg. Co.*, 148 F. Supp. 3d 852, 870 (N.D. Cal. 2015) (citing *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578–79 (1984)).  The rationale for this rule is that any irregularities in the foreclosure sale do not damage plaintiffs if they could not have redeemed the property had the procedures been proper.  *Id*.  The tender rule also applies to claims seeking damages, as "plaintiffs cannot claim to have been damaged by the foreclosure process unless they are in a position to redeem the property."  *Toneman v. U.S. Bank, Nat'l Ass'n for Bear Stearns Asset Backed Sec. Tr. 2004-AC7*,

6

1    No. CV1209369MMMMRWX, 2013 WL 12141443, at *12 (C.D. Cal. Feb. 22, 2013). Thus, to
2    meet the tender requirement "[a] plaintiff must (1) demonstrate a willingness to pay and (2) show
3    the ability to pay." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1184 (N.D.
4    Cal. 2009) (citing *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)).

5    In the Court's November 30, 2020 Order, the Court excused Plaintiffs from the tender
6    requirement at the motion to dismiss stage because Plaintiffs sufficiently alleged they "could have
7    and would have reinstated the loan or taken other measures to save the property." (ECF No. 9 at
8    11.) However, now, after having the opportunity to conduct discovery, Plaintiffs have not
9    produced any evidence demonstrating their willingness or ability to pay the $596,548.99 owed on
10   the Subject Property.

11   Plaintiffs argue, regardless of their ability to pay the remaining balance on the Subject
12   Property, the tender requirement should be set aside as a matter of law. (ECF No. 25-1 at 5.)
13   Specifically, Plaintiffs contend "California courts have expressly found tender not to be required
14   in cases involving dual tracking allegations" under the Homeowner Bill of Rights ("HBOR").[6]
15   (*Id.* (citing *Valbuena v. Ocwen Loan Serving, LLC*, 237 Cal. App. 4th 1267, 1273 (2015)).)
16   However, Plaintiffs' reliance on *Valbuena* is unpersuasive. In *Valbuena*, the court found tender is
17   not required in cases involving dual tracking allegations because such a requirement would
18   "completely eviscerate the remedial provisions of the [HBOR]." 237 Cal. App. 4th at 1274.
19   Defendants, though, do not raise the tender requirement as a defense to Plaintiffs' claim under the
20   HBOR (Claim Three). Instead, Defendants "only raised the tender defense as to the claims for
21   wrongful foreclosure and violation of [§] 2924g(c)." (ECF No. 27 at 6.) And as noted in the
22   Court's November 30, 2020 Order, tender is generally required in actions to set aside a completed
23   foreclosure by alleging wrongful foreclosure or violations of § 2924g. (ECF No. 9 at 19–20); *see*
24   *Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16,
25   2009) (finding the tender rule is a condition precedent to any claim for wrongful foreclosure);
26   *Bailey v. Specialized Loan Servicing*, *LLC*, No. EDCV1401586JGBKKX, 2016 WL 6275391, at

---

28   [6] The HBOR prohibits "dual-tracking," a process by which a financial institution pursues foreclosure while simultaneously making a decision on a contemplated loan modification.

7

1  \*3 (C.D. Cal. Jan. 7, 2016) (finding the plaintiff must demonstrate her ability to tender the
2  balance of the mortgage loan in order to move forward with her claim under § 2924g).

3        Plaintiffs also argue the Court should disregard the tender requirement on equitable
4  grounds.  The tender rule is an equitable concept, which means it is within the Court's discretion
5  to require tender from a plaintiff.  *See Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291
6  (1911); *Rodriguez v. Litton Loan Servicing LP*, No. 09–cv–0029, 2009 WL 1326339, at \*6 (E.D.
7  Cal. May 12, 2009); *Stephens, Partain & Cunningham v. Hollis*, 196 Cal.App.3d 948, 955
8  (Ct.App.1987).  However, Plaintiffs' only contention as to why imposing the tender requirement
9  would be inequitable is they would have "reinstated the loan or taken other measures to save the
10 property" had Plaintiffs been given sufficient notice of the foreclosure sale.  (ECF No. 25-1 at 6.)
11 However, it is undisputed Plaintiffs received a notice of the foreclosure sale over a month in
12 advance of the scheduled sale.  And as previously stated, Plaintiffs have not provided the Court
13 with any evidence to determine their ability and willingness to pay the balance owed on the
14 Subject Loan.  Moreover, it is undisputed Plaintiffs had over five years to resume making
15 payments on the Subject Loan yet did not do so, despite making over $9,000 a month in gross
16 income.  Based upon this factual record, the Court finds the balance of equities weighs in favor of
17 enforcing the tender requirement.

18       Accordingly, the Court finds there is no basis to set aside the tender requirement, and
19 Defendants are thus entitled to summary judgment as to Claims One and Four.

20       B.    <u>Owner-Occupied</u>

21       Defendants next move for summary judgment as to Claim Three for violation of Civil
22 Code § 2923.7(b) because the Subject Property was not "owner-occupied" at the time of the
23 foreclosure sale.  (ECF No. 22 at 21–22.)  Plaintiffs disagree and argue summary judgment
24 should be denied because Wong did occupy the Subject Property as his primary residence during
25 the relevant period.  (ECF No. 25-1 at 9.)

26       The HBOR provides § 2923.7 "shall apply only to a first lien mortgage or deeds of trust
27 that are secured by owner-occupied residential real property containing no more than four
28 dwelling units."  Cal. Civ. Code § 2924.15.  The law further clarifies "owner-occupied" means

1    "the property is the principal residence of the borrower and is security for a loan made for
2    personal, family, or household purposes." (*Id*.)

3    Defendants contend several pieces of evidence indicate the Subject Property was not
4    owner-occupied as Plaintiffs' primary residence. (ECF No. 22 at 21–22.) First, in June 2013,
5    Wells Fargo approved a loan modification for Plaintiffs' property located on Marsh Hawk Drive
6    in Folsom. (*Id*. at 10.) In the loan modification agreement, Plaintiffs attested, "I live in the
7    [Marsh] Property as my principal residence." (*Id*.) Second, in Wong's first bankruptcy petition
8    filed in 2015, he listed his address as 1153 King Fisher Drive in Folsom. (*Id*. at 11.) Third, in
9    Wong's third bankruptcy petition filed in 2017, Wong listed his address as 198 Marsh Hawk
10   Drive in Folsom. (*Id.*) Fourth, on March 2, 2018, Wells Fargo received a mortgage assistance
11   application relating to the Subject Loan. (*Id*.) In the application, Plaintiffs listed the Subject
12   Property as an "investment property" with a "renter" and their Marsh Hawk Drive property as
13   their principal residence. (*Id*.) Plaintiffs also checked the "Yes" box in the application to indicate
14   the Subject Property had been a rental for the last eighteen months. (*Id*.)

15   Notably, Plaintiffs do not address any of this evidence in their opposition. Instead,
16   Plaintiffs submitted a declaration from Wong who stated, "beginning in January 2018[,] I
17   occupied the [Subject Property] as my primary residence." (ECF No. 25-4 at 9.) Additionally,
18   Plaintiffs submitted portions of Mohd-Khatib's deposition. In the deposition, Mohd-Khatib did
19   not deny the Subject Property was a rental property but stated, "[Wong] had an office and also a
20   bedroom upstairs" at the Subject Property. (ECF No. 25-3 at 8.) However, outside of these self-
21   serving statements, Plaintiffs offer no evidence to support their contention Wong used the Subject
22   Property as his principal residence.

23   "The law is clear that [p]laintiff[s] must allege that the subject property is owner-occupied
24   as her principal residence." *Greene v. Wells Fargo Bank, N.A.*, No. 15-CV-00048-JSW, 2016
25   WL 360756, at *2 (N.D. Cal. Jan. 28, 2016) (citing *Mulato v. Wells Fargo Bank, N.A.*, 76 F.
26   Supp. 3d 929, 957 (N.D. Cal. 2014)). However, the law is not clear on how courts should
27   determine whether a property is a principal residence under the HBOR. And § 2924.15 is silent
28   on the question of the "relevant time for purposes of the owner occupied requirement." *Mulato*,

9

76 F. Supp. 3d at 957. Courts have found, though, evidence including telephone bills, tax payment vouchers, parking tickets, and other bills in the borrower's name can be used to show proof of occupancy. Courts have also found a property "clearly would not be owner-occupied if it was rented to another" or "used only for business and mail-forwarding purposes." *Masson v. Selene Finance LP*, No. 12–cv–05335 SC, 2013 WL 271256, *3 (N.D. Cal. Dec. 19, 2014) (denying motion to dismiss federal Equal Opportunity Act claim based on § 2924.15).

In the instant case, the documents Plaintiffs submitted to Wells Fargo and the bankruptcy court over the course of several years shows Plaintiffs used other properties as their primary residence and the Subject Property as a rental property. Those documents contradict Plaintiffs' self-serving statements that Wong used the Subject property as his primary residence.[7] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ("[T]his Court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (citing cases). Based on the available evidence and absent any evidence to the contrary, Plaintiffs fail to raise a triable issue of fact as to whether they used the Subject Property as their primary residence.

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Claim Three.

**IV.   CONCLUSION**

For the foregoing reasons, the Court herby GRANTS Defendants' motion for summary judgment. (ECF No. 22.) The Clerk of Court is directed enter judgment in Defendants' favor and close the case.

IT IS SO ORDERED.

Date: September 28, 2023

Troy L. Nunley
United States District Judge

---

[7] The Court is troubled by Plaintiffs making one representation about the occupancy status of the Subject Property to Wells Fargo and the bankruptcy court and then making a completely different representation to this Court.